**William G. WHITNEY and Margaret D. Whitney, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 94–CV–6445L.**

United States District Court,
W.D. New York.

Dec. 8, 1995.

---

**42**

Scott F. Cristman, Nixon, Hargrave, Devans & Doyle LLP, Rochester, NY, Matthew A. Rosenbaum, Gray Feldman & Rosenbaum, LLP, Rochester, NY, for plaintiffs.

Richard Resnic, U.S. Attorney, Rochester, NY, Avery M. Ellis, U.S. Department of Justice, Tax Division, Washington, DC, for defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

This is an action for recovery of federal income tax and interest allegedly erroneously assessed and collected. Plaintiffs ("the Whitneys") seek the return of monies for tax years 1986 (the first cause of action), 1987 (the second cause of action), and 1988 (the third cause of action). Presently before me is the Government's motion to dismiss the first cause of action for lack of subject matter jurisdiction (pursuant to Fed.R.Civ.P. 12(b)(1)) or, in the alternative, for partial summary judgment. For the reasons set forth below, the Government's motion to dismiss will be granted and the first cause of action dismissed in its entirety.

## BACKGROUND

William Whitney was the sole shareholder of an S Corporation, started in 1975, which provided investment services. In 1986 he bought a house in Florida from which he operated part of his business (the other part remained in Rochester). Business reversals and the stock market crash in 1987 badly impacted his finances. In 1988, he tried to sell the Florida house. In 1990 he abandoned it, and in 1992 he lost the property in mortgage foreclosure proceedings.

The Whitney's 1986 tax return was timely filed and their 1986 taxes paid in full on August 15, 1987. On or about June 14, 1993, the Whitneys filed an amended return for tax year 1986 (a Form 1040X), with the Internal Revenue Service District Office in Buffalo, New York. By this amended return the Whitneys sought a refund of federal income tax paid for 1986 in the amount of $22,200, together with allowable interest. This refund request was based on two things: the deduction of operating expenses incurred in connection with their business in Florida, as well as the carryback of net operating losses from tax year 1989.

By letter dated September 8, 1993, the Buffalo Appeals Office of the Internal Revenue Service ("IRS") sent a letter notice to the Whitneys stating that there was no basis to allow any part of their claim for a refund. The letter stated in part: "[y]ou may pursue this matter further by filing suit in either the U.S. District Court or the U.S. Claims Court." This lawsuit was filed in September 1994 and the Whitney's first cause of action is for the 1986 refund that was denied by the IRS.[1]

## THE GOVERNMENT'S MOTION

In its motion, the Governments asserts that the Whitney's first claim must be dismissed in its entirety as untimely. There are two aspects to the Government's motion, the first relating to the deduction for operating expenses and the second relating to the car-

---

1. Similar amended returns were filed at later times seeking refunds for tax years 1987 and 1988. As these claims are not the subject of the Government's motion, I will not discuss factual information relevant to them.

ryback of net operating losses from tax year 1989.

■ Concerning the deduction for operating expenses, the Government contends that the Whitney's claim is untimely pursuant to 26 U.S.C. § 6511(a), the controlling statute of limitations. In relevant part this statute requires that an administrative claim for a tax refund must be filed within three years from the time the return for the tax year in question was filed. The claim for a refund is itself a necessary prerequisite to bringing any lawsuit. *See* 26 U.S.C. § 7422.

In this case, the return for 1986 was filed on August 15, 1987. Therefore, asserts the Government, the claim for a refund must have been filed not later than three years later, August 15, 1990. In fact, the claim for refund (in this case the amended return) was not made until June 14, 1993, almost three years after the expiration of the limitations period.[2]

The Whitneys do not dispute this limitations requirement but claim that the IRS' "denial letter" dated September 8, 1993 (from the Buffalo Appeals Office) constituted a "waiver" of the limitations period. Because the letter expressly stated "[y]ou may pursue this matter further by filing suit …" the Whitneys assert that the IRS waived its untimeliness defense.[3]

I find this argument unpersuasive. First of all, I do not read the IRS' letter as any type of waiver of the requisite limitation. The letter (which appears to be a form letter) merely advises the taxpayer that the administrative claim has been denied and the parties may pursue whatever remedies they have in the United States District Court or Claims Court. There is no mention whatsoever of jurisdictional issues, let alone an express waiver of any related defenses.

**2.** There is no dispute in this case that the amended return constitutes an administrative claim for refund for purposes of 26 U.S.C. § 6511 and 26 U.S.C. § 7422.

**3.** The full text of the letter is as follows:
I have completed my review of your claim for abatement and/or refund of taxes that we have charged you. Based on the information submitted, there is no basis to allow any part of your claim.

■ Furthermore, I do not believe that the limitations period could be waived. *See Rosenbluth Trading v. United States,* 736 F.2d 43, 47 (2d Cir.1984) (the filing of a timely refund claim is a jurisdictional requirement which cannot be waived); *see also Olson v. United States,* 80–1 U.S.T.C. ¶ 9324, 1979 WL 1544 (N.D.Ind.1979) ("The Court doubts whether an employee of the Internal Revenue Service would have the power to waive the requirements of Section 6511(a) where the claim for refund is already barred at the time the alleged waiver occurs"). For these reasons I find that the Whitney's claim for a refund based upon 1986 operating expenses is untimely and must be dismissed.

■ As for the second part of the Government's motion, that addressing the Whitney's claim for a refund based upon net operating loss carryback from the 1989 tax year, the controlling statute of limitations is 26 U.S.C. 6511(d)(2)(A). This provision provides a "special period of limitation" for claims arising out of net operating loss carrybacks. Pursuant to its terms,

[i]f the claim for credit or refund relates to an overpayment attributable to a net operating loss carryback …, in lieu of the 3–year period of limitation prescribed in subsection (a), the period shall be that period which ends 3 years after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss … which results in such carryback. …

The Government interprets this statute to mean that the taxpayer has three years from the filing of the return (whether filed on April 15th or some other date pursuant to an authorized extension) within which to file an administrative claim for refund. In this case,

You may pursue this matter further by filing suit in either the U.S. District Court or the U.S. Claims Court. If you decided to do this, you must file the suit within two years of the date on this letter denying your claim. However, if you signed a waiver of the notice of disallowance (Form 2297), the two year period began on the date you filed that waiver.
If you have any questions on this matter, please call me at the telephone number shown above.

the return for the tax year 1989 (the year from which the carryback was sought) was filed on or before April 15, 1990. The Whitneys did not seek any extension and, therefore, none was obtained. Accordingly, the Government asserts that they are limited to filing a claim within three years of the date the return was *actually* filed. In this case, that date would be, at the latest, April 15, 1993. Because the Whitney's amended return was not filed until June 14, 1993, the Government contends that this claim is untimely and the request for a refund concerning the operating loss carryback for 1986 must be dismissed. I agree.

The Whitney's opposition to the motion is based upon a reading of the statute that is tortured to say the least. The Whitneys suggest that every taxpayer has the benefit of the 4 month automatic extension (*see* Treas.Regs. § 1.6081–4), for purposes of this statute, whether or not the extension is actually sought. Thus, the Whitneys suggest that the limitations period for them was 3 years and 4 months, making their claim timely, even though their 1989 return was actually filed without the benefit of any extension.

The plain reading of the statute suggests that such an interpretation is incorrect. Moreover, the limited legislative history on the matter also suggests that plaintiff's reading is flawed. It is true that there was an amendment to this statute in 1978 but it is clear that Congress merely intended to correct an anomaly that occurred under prior law.

Prior to 1979, individual taxpayers were required to file a claim for carryback losses by "the 15th day of the 40th month" following the "end of the taxable year" in which the loss was incurred, whether or not any extension was obtained. Thus, the limitations period could never vary even though the time the return was actually filed varied significantly, depending upon the length of authorized extensions. I find that this anomaly is all that the amendment addressed. In other words, as corrected by the amended language, if a taxpayer obtains an extension, whether it is an automatic extension under Treas.Regs. § 1.6081–4 or any other extension, the taxpayer has the benefit of that

extension period when calculating the three year limitation period.

Common sense further requires this result. While it seems eminently fair that all taxpayers be afforded three years after they file their return, whenever that may be, to file a claim, it makes no sense whatsoever to grant a taxpayer an additional four months' extension on the limitations period when the taxpayer never received the extension.

In my view, the plain meaning of § 6511(d)(2)(A) is that if the taxpayer obtains an extension within which to file a return, the three year limitations period is calculated from that time. Because the Whitneys did not obtain any extension to file their return, the three year limitations period for a refund began to run on April 15, 1990, the date they actually filed their 1989 return. Accordingly, I find the Whitney's claim for a refund based upon the carryback of net operating losses to be untimely.

### CONCLUSION

For all the above reasons, I hereby GRANT the Government's motion to dismiss the Whitney's first cause of action in its entirety.

IT IS SO ORDERED.